IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT R. VERBANIK, | ) |
| | ) Civil Action No. 09 - 448 |
| Plaintiff, | ) |
| | ) Magistrate Judge Lisa Pupo Lenihan |
| v. | ) |
| | ) |
| SUPERINTENDENT MICHAEL HARLOW; ET SEQ., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION and ORDER**

Plaintiff, Robert R. Verbanik, a *pro se* prisoner previously housed at the State Correctional Institution at Mercer (SCI-Mercer), filed his Second Amended Complaint on January 6, 2010 against various officers and employees of the Pennsylvania Department of Corrections (DOC) at SCI-Mercer. The Second Amended Complaint complains about the following conditions of his confinement Plaintiff allegedly was subjected to at SCI-Mercer: improper housing; selective enforcement; harassment; retaliation; false misconducts; excessive force; conspiracy, and violation of the right of access to the courts. Defendants have filed a Motion to Dismiss (doc. no. 49), which, for the reasons set forth below, will be granted. An appropriate Order follows.

**A. Standard of Review**

Defendants have filed a Motion to Dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6) (doc. no. 49). The complaint must be read in the light most favorable to the plaintiff and all well-pleaded, material allegations in the complaint must be taken as true. Estelle v. Gamble, 429 U.S. 97 (1976). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO

v. Schermerhorn, 373 U.S. 746, 753 n. 6 (1963).  A viable complaint must include "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v.Twombly, 550 U.S. 554, 556 (2007) (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff.  Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985).  The Court, however, need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint.  See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)).  Nor must the court accept legal conclusions set forth as factual allegations.  Bell Atlantic Corp., 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).  "Factual allegations must be enough to raise a right to relief above the speculative level."  Bell Atlantic Corp., 550 U.S. at 555.  Additionally, "a civil rights claim 'must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple and conclusory statements are insufficient to state a claim under § 1983." '  Coronado v. Goord, No. 99 Civ. 1674, 2000 WL 1372834, at *2 (S.D.N.Y. 2000) (quoting Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir. 1987)).[1]  It is not proper for the court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged, or that the defendants have violated the ... laws in ways that have not been alleged." Associated General Contractors of California, Inc. v. California State Council of

---

1. *See also* Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1951 (U.S. 2009) (holding that, while the Complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements" of a constitutional claim and must state a claim that is plausible on its face) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) and providing further guidance on the standard set forth therein).

Carpenters, 459 U.S. 519, 526 (1983).

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. Pension Benefit Guar. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. *Id*. (citations omitted). Moreover, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. Spruill v. Gillis 372 F.3d 218, 223 (3d Cir.2004); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

In addition, a court must employ less stringent standards when considering pro se pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). Finally, the United States Court of Appeals for the Third Circuit has held that, in civil rights cases, a court must give a plaintiff the opportunity to amend a deficient complaint - regardless of whether the plaintiff requests to do so - when dismissing a case for failure to state a claim, unless doing so would be inequitable or futile. *See* Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007) (citing Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004)).

### B. Failure to Exhaust Administrative Remedies

Defendants' first basis for dismissal of Plaintiff's claims is his alleged failure to have exhausted available administrative remedies as required by the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996). In this regard, in the PLRA, Congress amended the Civil Rights of Institutionalized Persons Act, 42 U.S.C.A. § 1997e, concerning suits by prisoners. Before the amendments, prisoners challenging the conditions of their confinement

under 42 U.S.C. § 1983 were not required to exhaust administrative remedies before filing suit. The PLRA amended section 1997e(a), as follows, making exhaustion a mandatory requirement.

> (a) Applicability of administrative remedies
>
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a), as amended.

The United States Court of Appeals for the Third Circuit analyzed the applicability of the exhaustion requirement in 42 U.S.C. § 1997e in Nyhuis v. Reno, 204 F.3d 65 (3d Cir. 2000) (Bivens action brought by a federal inmate) and Booth v. Churner, 206 F.3d 289 (3d Cir. 2000) (civil rights action brought by a state prisoner). In each of these cases, the Court of Appeals announced a bright line rule that inmate-plaintiffs must exhaust all available administrative remedies before they can file an action in federal court concerning prison conditions. In so holding, the court specifically rejected the notion that there is ever a futility exception to section 1997e(a)'s mandatory exhaustion requirement. Booth, 206 F.3d at 300; Nyhuis, 204 F.3d at 66. A unanimous Supreme Court affirmed the Court of Appeals' holding in Booth v. Churner, 532 U.S. 731 (2001) where the Court confirmed that in the PLRA Congress mandated complete exhaustion of administrative remedies, regardless of the relief offered through those administrative procedures. In addition, in Porter v. Nussle, 534 U.S. 516 (2002), the Supreme Court clarified that the PLRA's exhaustion requirement applies to all inmate suits concerning prison life, whether they involve general circumstances or specific episodes and whether they allege excessive force or other conduct.

The administrative grievance procedure for Pennsylvania inmates is codified in the Pennsylvania Department of Corrections Policy Statement No. DC-ADM 804-1, entitled "Consolidated Inmate Grievance Review System." The purpose of the grievance system is to insure that every inmate confined in a Bureau of Correction facility has an avenue through which prompt resolution of any problem which arises during the course of confinement may be sought. DC-ADM 804 ¶ 1. The grievance system applies to all state correctional institutions and provides three levels of review. Grievances must be in writing and submitted in the format provided on the forms supplied by the institution. DC-ADM 804 ¶ (VI)(A)(1)(f). An initial grievance must be submitted by the inmate to the Facility Grievance Coordinator within fifteen (15) working days after the event upon which the claim is based. DC-ADM 804 ¶ (VI)(A)(1)(h). The Facility Grievance Coordinator must assign a grievance tracking number to all grievances (even rejected grievances) upon receipt and enter all grievances into the Automated Inmate Grievance Tracking System. DC-ADM 804 ¶ (VI)(B)(1)(a). If the Facility Grievance Coordinator determines that the issue being grieved is in accordance with DC-ADM 804, he or she will designate a staff member to serve as the Grievance Officer for that issue. DC-ADM 804 ¶ (VI)(B)(1)(e). The Grievance Officer must provide a written response to the inmate within ten working days, including a brief rationale summarizing the conclusions and any action taken or recommended to resolve the issues raised in the grievance. DC-ADM 804 ¶ (VI)(B)(1)(h). An inmate may appeal an Initial Review decision, or grievance restriction, to the Facility Manager in writing, within five working days from the date of receipt by the inmate of the Initial Review decision. DC-ADM 804 ¶ (VI)(C)(1)(b). The Facility Manager must notify the inmate of his/her decision within fifteen working days of receiving the appeal; the decision may consist of upholding the decision, modification, reversal, remand, or reassignment for

further fact-finding.  DC-ADM 804 ¶ (VI)(C)(2)(c).  An inmate who is dissatisfied with the disposition of an appeal from the Facility Manager, may submit an appeal to the Secretary's Office of Inmate Grievances and Appeals, within five working days of receiving the decision.  DC-ADM 804 ¶ (VI)(D)(1)(b).  The Secretary's Office must respond to all appeals within 30 working days and ensure that all appeals and responses are properly maintained in the Automated Inmate Grievance Tracking System.  DC-ADM 804 ¶ (VI)(D)(2)(a).

In the instant action, Defendants assert that Plaintiff failed to have exhausted his administrative remedies in that he failed to have completed the three-step grievance process provided for in DC-ADM 804 as to any of his claims in that he failed to have pursued any of his grievances through all three levels of appeal.  In support of their assertion, Defendants attached the affidavit of Dorina Varner, DOC Officer in the Administrative Review Office (doc. no. 43-2, pp. 2-4).  In his Second Amended Complaint, Plaintiff does not deny that he did not file any appeals of his grievance; he merely makes bald unsupported statements that he was unable to pursue his claims out of fear of retaliation.

The Court of Appeals for the Third Circuit has held that a prisoner's failure to comply with the procedural and substantive requirements of DOC's grievance policy, as set forth in DC ADM 804, results in procedural default, thereby precluding an action in federal court.  *See* Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004).  The United States Supreme Court adopted a similar holding in Woodford v. Ngo, 548 U.S. 81 (2006) wherein it held that an untimely or otherwise procedurally defective administrative grievance or appeal does not satisfy the PLRA's mandatory exhaustion requirement.

Because exhaustion requirements are designed to deal with

> parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." This Court has described the doctrine as follows: "[A]s a general rule ⋯ courts should not topple over administrative decisions unless the administrative body not only has erred, but has erred against objection made at the time appropriate under its practice." Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.

Woodford, 548 U.S. at 90-91 (internal citations, quotations and footnotes omitted).

The Court further noted that "[c]onstruing § 1997e(a) to require proper exhaustion also fits with the general scheme of the PLRA, whereas respondent's interpretation would turn that provision into a largely useless appendage. The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodard, 548 U.S. at 93. The Court concluded that the benefits of exhaustion could only be realized if the prison grievance system is given a fair opportunity to consider the claims, which required the grievant to comply with the procedural rules. *Id*. at 94.

This Court is required to follow the directive of the United States Supreme Court and grant Defendants' Motion to Dismiss Plaintiff's unexhausted claims due to Plaintiff's failure to have properly exhausted his available administrative remedies. *See* Eakle v. Palakovich, 200 Fed. Appx. 155, 156, 2006 WL 2917531, *1 (3d Cir. 2006).

### C. Claims concerning Plaintiff's Misconducts

Plaintiff also suggests that, because he appealed his misconduct proceedings through all stages of review, that he has complied with the exhaustion requirement as to those claims. In this regard, the relevant procedural rules are set forth in DC-ADM 801 - Inmate Discipline. While this policy provides for three levels of appeal, it limits the bases for appeal to three categories: the procedures employed were contrary to law, Department directives, or regulations; the punishment is disproportionate to the offense; and/or the findings of fact were insufficient to support the decision. DC-ADM 801(5)(A)(1)(a-c). As these categories relate only to due process concerns, it is only these issues that can be reviewed through the misconduct process.

To the extent Plaintiff raises non-due process claims in regards to his misconducts, such claims must be dismissed due to his failure to have exhausted them through the DOC Grievance Policy. To the extent Plaintiff makes due process claims concerning the issues raised in his misconduct proceedings, such claims do not state a claim upon which relief may be granted.

In this regard, the Due Process Clause of the Fourteenth Amendment does not protect every change in the conditions of confinement having a substantial adverse impact on a prisoner. Meachum v. Fano, 427 U.S. 215, 224 (1976). The Due Process Clause shields from arbitrary or capricious deprivation only those facets of a convicted criminal's existence that qualify as "liberty interests." Hewitt v. Helms, 459 U.S. 460 (1983); Morrissey v. Brewer, 408 U.S. 471 (1972). The types of protected liberty interests are not unlimited. The interest must rise to more than an abstract need or desire and must be based on more than a unilateral hope. Rather, an individual claiming a protected interest must have a legitimate claim of entitlement to it. Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979) (citation omitted).

Thus, the threshold question presented by Plaintiff's due process claims is whether Defendants' actions impacted a constitutionally-protected liberty interest. A liberty interest may arise either from the Due Process Clause itself, or from a statute, rule, or regulation. Hewitt, 459 U.S. at 466. A liberty interest inherent in the Constitution arises when a prisoner has acquired a substantial, although conditional, freedom such that the loss of liberty entailed by its revocation is a serious deprivation requiring that the prisoner be accorded due process. Gagnon v. Scarpelli, 411 U.S. 778, 781 (1973). Interests recognized by the Supreme Court that fall within this category include the revocation of parole, Morrissey, 408 U.S. at 471, and the revocation of probation, Gagnon, 411 U.S. at 778. The Due Process Clause, however, does not create an inherent liberty interest to remain free from administrative segregation. *See, e.g.*, Hewitt, 459 U.S. at 468; Wolff, 418 U.S. at 556; Montayne v. Haymes, 427 U.S. 236, 242 (1976); Sheehan v. Beyer, 51 F.3d 1170, 1175 (3d Cir. 1995); Layton v. Beyer, 953 F.2d 839, 845 (3d Cir. 1992). Accordingly, Plaintiff can succeed under the Due Process Clause only if state law or regulation has created a constitutionally-protected liberty interest in remaining free from administrative detention.

In Sandin v. Conner, 515 U.S. 472 (1995), the Supreme Court pronounced a new standard for determining whether prison conditions deprive a prisoner of a liberty interest that is protected by due process guarantees. Specifically, the Supreme Court held that prison conditions do not impact a protectable liberty interest unless they result in an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 483 (emphasis added). Applying this test, the Supreme Court concluded that the prisoner in Sandin did not have a protected liberty interest in remaining free of disciplinary detention or segregation because his thirty-day disciplinary detention, though punitive, did not present a dramatic departure from the basic

9

conditions of his sentence. In making this determination, the Supreme Court looked at two basic factors: 1) the amount of time the prisoner was placed into disciplinary segregation; and 2) whether the conditions of his confinement in disciplinary segregation were significantly more restrictive. After reviewing these two factors, the Court concluded that thirty days in disciplinary detention, which was similar in many respects to administrative custody, did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest.

First, it must be noted that a prisoner does not have a constitutional right to be free from being falsely or wrongly accused of conduct that may result in the deprivation of a protected liberty interest. Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986), *cert. denied*, 485 U.S. 982 (1988). In other words, the mere filing of false charges against an inmate does not constitute a *per se* constitutional violation. *Id*. Thus, prisoners cannot claim they were denied a constitutional right based solely on the contention that officials filed false or unfounded misconduct charges. Smith v. Mensinger, 293 F.3d 641, 653-54 (3d Cir.2002) ("so long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough ..."). Thus, even if false charges impaired a protected liberty interest, as long as prison officials granted the inmate a hearing and an opportunity to be heard, the filing of unfounded charges did not give rise to a procedural due process violation actionable under section 1983.

In light of the Supreme Court's ruling in Sandin, however, Plaintiff has not even demonstrated that he had a constitutionally protected liberty interest that was offended by Defendants' actions in allegedly issuing a false report. Specifically, in deciding whether a protected liberty interest exists under Sandin, a federal court must consider the duration of the disciplinary confinement and the conditions of that confinement in relation to other prison conditions. Mitchell

v. Horn, 318 F.3d 523, 532 (3d Cir. 2003) (citing Shoats v. Horn, 213 F.3d 140, 144 (3d Cir. 2000)). In this case, Plaintiff received three misconducts while incarcerated at SCI-Mercer. As a result of these misconducts, he received 180 days of disciplinary time. Recently, the Court of Appeals for the Third Circuit held that, absent allegations showing that conditions in disciplinary confinement for 930 days imposed atypical and significant hardship on inmate in relation to ordinary incidents of prison life, the inmate was not entitled to procedural protections required by due process during prison disciplinary proceedings. *See* Young v. Beard, 227 Fed. Appx. 138, 2007 WL 824172 (3d Cir. 2007). Thus, the facts before this Court do not support a due process violation. *See, e.g.,* Strong v. Ford, 108 F.3d 1386 (Unpublished Opinion), 1997 WL 120757 (9th Cir. 1997) (the alleged making of a false charge, however reprehensible or violative of state law or regulation, does not constitute deprivation of a federal right protected by 42 U.S.C. § 1983 when it does not result in the imposition of an atypical hardship on the inmate in relation to the ordinary incidents of prison life). Thus, Defendants' Motion to Dismiss (doc. no. 49) will be granted. An appropriate Order follows.

**ORDER**

**AND NOW**, this 29th day of April, 2010;

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (doc. no. 49) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court mark this case **CLOSED**.

**AND IT IS FURTHER ORDERED** that pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, Plaintiff has thirty (30) days to file a notice of appeal as provided by Rule 3 of the Federal Rules of Appellate Procedure.

By the Court:

<u>/s Lisa Pupo Lenihan</u>
Lisa Pupo Lenihan
United States Magistrate Judge

Dated: April 29, 2010

cc: Robert Verbanik
    GV - 6719
    S.C.I. Mercer
    801 Butler Pike
    Mercer, PA 16137