IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT R. VERBANIK, | ) |
| | ) Civil Action No. 09 – 448 |
| Plaintiff, | ) |
| | ) |
| v. | ) Chief Magistrate Judge Lisa Pupo Lenihan |
| | ) |
| SUPERINTENDANT MICHAEL | ) |
| HARLOW, *et al.*, | ) ECF Nos. 93, 95 |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

This case is before the Court on Plaintiff's Motion in Support of Third Circuit's Remand (ECF No. 93), which this Court has construed as a Motion for Summary Judgment, and Defendants' Motion for Summary Judgment (ECF No. 95). For the following reasons, Plaintiff's Motion will be denied and Defendant's Motion will be granted.

### I.   PROCEDURAL HISTORY

Plaintiff, Robert R. Verbanik, an inmate presently incarcerated at the State Correctional Institution in Albion, Pennsylvania, commenced this civil action on April 16, 2009 pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983. Plaintiff filed a Second Amended Complaint on January 6, 2010, against various officers and employees of the State Correctional Institution at Mercer ("SCI-Mercer").[1]  (ECF No. 47.)  Defendants filed a Motion to Dismiss (ECF No. 49),

---

[1] Plaintiff names as Defendants:  Superintendent Michael Harlow ("Harlow"); Captain Conrad De Chant ("De Chant"); Sergeants Thomas Mills ("Mills") and Eric Yohe ("Yohe"); and Corrections Officers Michael Schuller ("Schuller"), Jason Andrews ("Andrews"); Walter Yourema ("Yourema"), and A. Gordon ("Gordon").

which this Court granted on April 29, 2010 (ECF No. 58).  Plaintiff appealed and the Third Circuit Court of Appeals remanded for further proceedings.  (ECF No. 77.)

Plaintiff subsequently filed a Motion in Support of Third Circuit's Remand (ECF No. 93), which this Court construed as a Motion for Summary Judgment following a status conference held on December 29, 2011 (ECF No. 94).  Defendants filed a Brief in Opposition to Plaintiff's Motion (ECF No. 98) along with their own Motion for Summary Judgment (ECF No. 95), Brief in Support thereof (ECF No. 96), and Concise Statement of Undisputed Material Facts (ECF No. 97).  Plaintiff filed a Response in Opposition to Defendants' Motion (ECF No. 103), a Brief in Support thereof (ECF No. 104), a Response to Defendants' Concise Statement of Undisputed Material Facts (ECF No. 105), and his own Concise Statement of Undisputed Material Facts (ECF No. 106).  The Motions are now ripe for review.

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, the record indicates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element to that party's case and for which that party will bear the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  The moving party bears the initial burden of identifying evidence or the lack thereof that demonstrates the absence of a genuine issue of material fact.  National State Bank v. Federal Reserve Bank of New York, 979 F.2d 1579, 1582 (3d Cir. 1992).  Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law.  Matsushita Elec.

Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The inquiry, then, involves determining "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990) (quoting Anderson, 477 U.S. at 251-52). If a court, having reviewed the evidence with this standard in mind, concludes that "the evidence is merely colorable . . . or is not significantly probative," then summary judgment may be granted. Anderson, 477 U.S. at 249-50. Finally, while any evidence used to support a motion for summary judgment must be admissible, it is not necessary for it to be in admissible form. *See* Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324; J.F. Feeser, Inc., v. Serv-A-Portion, Inc., 909 F.2d 1524, 1542 (3d Cir. 1990).

### III. DISCUSSION

The Court construes Plaintiff's Second Amended Complaint to contain the following claims: retaliation, due process violations, verbal harassment, supervisory liability, equal protection violations, conspiracy, and several state law claims. Defendants move for summary judgment on all claims and on the basis that Plaintiff has failed to exhaust his administrative remedies as to all claims whereby exhaustion must be accomplished through the prison grievance process.[2]

---

[2] In light of the Third Circuit's Opinion remanding this case for further proceedings, the Court declines to grant summary judgment on the basis that Plaintiff failed to exhaust his administrative remedies with respect to all claims whereby he was required to utilize the prison's inmate grievance system. *See* Verbanik v. Harlow, 441 F. App'x 931 (3d Cir. 2011).

### A. Retaliation

Plaintiff alleges numerous instances of retaliation. It is well settled that retaliation for the exercise of a constitutionally protected activity is itself a violation of rights secured by the Constitution, which is actionable under section 1983. Rauser v. Horn, 341 F.3d 330 (3d Cir. 2001); White v. Napoleon, 897 F.2d 103, 112 (3d Cir. 1990). However, merely alleging the fact of retaliation is insufficient; in order to prevail on a retaliation claim, a plaintiff must show three things: (1) that the conduct in which he engaged was constitutionally protected; (2) that he suffered "adverse action"[3] at the hands of prison officials; and (3) that his constitutionally protected conduct was a substantial motivating factor in the defendants' conduct. Rauser, 241 F.3d at 333 (adopting Mount Healthy Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)). The crucial third element, causation, requires a plaintiff to prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. *See* Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007); Krouse v. American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir. 1997)). Once a plaintiff has made his *prima facie* case, the burden then shifts to the defendant to prove by a preponderance of the evidence that he or she "would have made the same decision absent the protected conduct for reasons reasonably related to penological interest." Rauser, 241 F.3d at 334 (incorporating Turner v. Safley, 482 U.S. 78, 89 (1987)).

#### 1. Housed in A-block for Four Months

---

[3] An adverse action is one "sufficient to deter a person of ordinary firmness from exercising his rights." Bailey v. Lawler, No. 3:07-CV-2058, 2010 U.S. Dist. LEXIS 128271, at *12 (M.D. Pa. Aug. 11, 2010).

As to Plaintiff's first claim of retaliation, he alleges that he was improperly housed in A-block for four months upon untrue rumors that he was a racist. In this instance, however, Plaintiff fails to satisfy the first element of a retaliation claim, *i.e.* that he engaged in constitutionally protected conduct for which he suffered an adverse action. Moreover, even had Plaintiff engaged in protected conduct, he has not presented evidence demonstrating that the conditions in A-block were so severe as to constitute an adverse action sufficient enough to deter a person of ordinary firmness from exercising his constitutional rights. *See* section III(A)(2), *infra*. As such, Defendants are entitled to summary judgment as to this claim of retaliation.

### 2. Cell Transfer

As to Plaintiff's second claim of retaliation, he alleges that he received a housing demotion from Defendant Schuller in retaliation for filing a grievance against Defendant Schuller the previous day. Plaintiff contends that when Defendant Schuller transferred Plaintiff from one housing unit to the other, Defendant Schuller stated, "you'll never win."

While Plaintiff has certainly satisfied the first element of a retaliation claim in this instance by engaging in protected activity, the filing of grievances, *see* Booth v. King, 346 F. Supp. 2d 751, 762 (E.D. Pa. 2004); Allah v. Al-Hafeez, 208 F. Supp. 2d 520, 535 (E.D. Pa. 2002), the Court finds that Plaintiff has not proven that his alleged housing demotion was an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights. Although courts have found that cell transfers to undesirable areas of a prison could have a strong deterrent effect, *see* Thaddeus-X v. Blatter, 175 F.3d 378, 399 (6th Cir. 1999) (placement in area of prison used to house mentally disturbed inmates combined with harassment and physical threats could constitute a sufficient adverse action for retaliation purposes), Allah v. Seiverling, 229 F.3d 220, 225-26 (3d Cir. 2000) (continued placement in administrative

confinement which resulted in reduced privileges could deter a person of ordinary firmness from exercising his First Amendment rights), the Third Circuit has stated that whether a prisoner has met this prong of his retaliation claim will depend on the facts of the particular case, Allah, 229 F.3d at 225.  Here, Plaintiff has alleged nothing more than he was transferred from the downstairs dorm room to the upstairs dorm room.  Although he conclusively claims that this was a "housing demotion," he has not shown through evidence how the new location was any less desirable than his old location, for example, that he was subjected to increased security or loss of privileges.  Simply put, he has not demonstrated that a fact finder could conclude that this transfer, what the Court presumes to be inconsequential, was sufficient to deter a person of ordinary firmness from exercising their First Amendment rights.  See Griffin v. Williams, No. 1:CV-10-02472, 2011 U.S. Dist. LEXIS 88524, at *18 (M.D. Pa. Aug. 10, 2011) (dismissing plaintiff's claim that his cell move from one double-bunk cell to another double-bunk cell in the same cell block was an adverse action sufficient to deter him from exercising his constitutional rights).  As such, Defendants are entitled to summary judgment as to this claim of retaliation.

    **3.  Left in Shower**

Plaintiff claims that he was left in the RHU shower for almost two hours in retaliation for filing a grievance against Defendant Harlow.  According to Plaintiff, when Defendants Andrews and Mills came to retrieve him, Plaintiff asked if he was left in the shower to be punished and Defendant Andrews replied, "write-up [Defendant Harlow] again and see what happens to you."  He claims that Defendant Mills acquiesced in Defendant Andrews' retaliation by failing to intervene, thereby retaliating himself.

While the Court finds that Plaintiff has satisfied the first element of a retaliation claim by filing a grievance complaining about a prison official, see Booth, 346 F. Supp. 2d at 762; Allah,

208 F. Supp. 2d at 535, the Court concludes that being left in the shower for a little more than an hour over what is required by DOC rules and regulations does not constitute an adverse action sufficient enough to satisfy the second element of a retaliation claim. Indeed, Plaintiff has not even alleged that he was cold or that the conditions were such that they could be described as unenjoyable to an ordinary inmate in a similar situation. Under these circumstances and based on the record presented before the Court, Plaintiff has failed to demonstrate that a reasonable fact finder could conclude that being left in the shower for the amount of time alleged would be sufficient enough to deter someone of ordinary firmness from exercising his or her constitutional rights. As such, Defendants are entitled to summary judgment on this retaliation claim.

### 4. Issuance and Fabrication of Misconduct #A552586

Plaintiff claims that he was issued Misconduct #A552586 in retaliation for writing complaints to Defendant Harlow about Defendant Schuller's harassing and retaliatory behavior. He further contends that the Misconduct was fabricated by Defendant De Chant, the investigating officer, out of retaliation of a perceived lawsuit that he believed Plaintiff to be filing against Defendant Schuller.

As to Misconduct #A552586, Plaintiff was charged and found guilty of using abusive, obscene, or inappropriate language and refusing to obey an order. As a result, he received sixty days of disciplinary confinement in the RHU. Defendants contend that Plaintiff received the Misconduct because he came into a staff office and, in an argumentative manner, demanded of Defendant Schuller that the lights be turned off in the dayroom. Defendant Schuller explained that the rule was that the dayroom lights be left on and he then gave Plaintiff a direct order to leave the office. Plaintiff again entered the office and continued to argue claiming that the other inmates wanted the lights off too. Defendant Schuller investigated and found this to be a lie.

When leaving the staff office, Plaintiff turned to Defendant Schuller and said, "I'm going to fucking talk to somebody about you."

Plaintiff has proved both the first and second elements of a retaliation claim in this instance. *See* Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) (holding that a prisoner's allegation that he was falsely charged with misconduct in retaliation for filing complaints against a prison official "implicates conduct protected by the First Amendment" and that "several months in disciplinary confinement would deter a reasonably firm prisoner from exercising his First Amendment rights"). Without addressing the third element, however, the Court finds that Plaintiff cannot succeed on this retaliation claim because Defendants have met their burden of showing that Plaintiff would have been issued the Misconduct for reasons reasonably related to penological interests even had he not complained about Defendant Schuller's behavior.

Based on evidence presented, which included the misconduct report issued by Defendant Schuller, the incident report issued by Defendant De Chant, and Plaintiff's version of events including his timeline demonstrating Defendant Schuller's biased actions, the Hearing Examiner found Plaintiff guilty of the charged offenses. The Court finds that there was "some evidence" sufficient to support the prison disciplinary conviction. *See* Superintendent v. Hill, 472 U.S. 445, 455-56 (1985);[4] *see also* Speight v. Minor, 245 F. App'x 213, 217 (3d Cir. 2007) ("As the District Court correctly noted, this disciplinary hearing record, specifically the charging officer's report, although meager, constitutes some evidence supporting the DHO's decision in Speight's case.") Because Plaintiff was found guilty of the Misconduct based upon some evidence that he did engage in the acts he was accused of, even if Plaintiff had presented sufficient evidence to

---

[4] The "some evidence" standard does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Hill, 472 U.S. at 455-56. "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id.

support his *prima facie* case of retaliation, he is essentially barred from succeeding on this retaliation claim because such a finding of guilt as to the Misconduct charge conclusively establishes that Defendants would have taken the same action for legitimate penological reasons regardless of any protected activity engaged in by Plaintiff. *See* Alexander v. Fritch, 396 F. App'x 867, 874 (3d Cir. 2010) (nonprecedential) (holding that "because there was evidence to support the hearing examiner's finding of guilty, there was a legitimate penological reason for the charge and punishment"); Carter v. McGrady, 292 F.3d 152, 159 (3d Cir. 2002) (affirming summary judgment in favor of defendants on retaliation claim where "the quantum of evidence" of the prisoner's misconduct showed that he would face disciplinary action notwithstanding his protected activity); Henderson v. Baird, 29 F.3d 464, 469 (8th Cir. 1994) (stating that a finding of "some evidence" in support of a disciplinary determination "checkmates" a retaliation claim). Consequently, Defendants are entitled to summary judgment as to this claim.

### 5. Issuance and Fabrication of Misconduct #B025225

Plaintiff also claims that he was issued Misconduct #B025225 in retaliation for complaining to Captain Zetwo the previous day about Defendants Yourema, Gordon, and Yohe's harassing behavior. He also claims that this Misconduct was fabricated in order to retaliate against him.

With respect to Misconduct #B025225, Plaintiff was charged and found guilty of threatening an employee or their family; using abusive, obscene, or inappropriate language; and refusing to obey an order. He received 105 days of disciplinary confinement. Defendants contend that Plaintiff received the Misconduct because he was both verbally and physically abusive to Defendant Yohe who was escorting him and as a result had to be placed in handcuffs.

Assuming arguendo that the verbal complaints Plaintiff made to Captain Zetwo are sufficient to constitute protected activity and that Plaintiff is able to satisfy the second and third elements of this retaliation claim, he is afforded no relief because Defendants have demonstrated that they would have issued Plaintiff the aforementioned Misconduct for reasons reasonably related to penological interests even had he not complained.

The evidence presented at Plaintiff's misconduct hearing included the misconduct report issued by Defendant Yohe and incident reports issued by CO Swartz, Sgt. Wyza, Lt. Yocum, Defendant Gordon, and Kenneth Wint. Plaintiff also presented his version of events, which included evidence that the Misconduct was issued in retaliation and a timeline of further retaliation for filing grievances and complaints. The Hearing Examiner took this evidence into consideration but found Plaintiff guilty of the charged offenses. Plaintiff was sanctioned to 120 days of disciplinary confinement, which was later reduced to 105 days upon appeal. As with the previous Misconduct, the Court finds that there was "some evidence" sufficient to support the Hearing Examiner's finding of guilt, thereby demonstrating that there was a legitimate penological reason for the charge and punishment as to this Misconduct. Therefore, Plaintiff cannot succeed on this retaliation claim and Defendants are entitled to summary judgment accordingly. See section III(A)(4), *supra*.

### B. Due Process

#### 1. Falsification of Misconducts #A552586 and #B025225

Plaintiff claims that Misconducts #A552586 and #B025225 were false and fabricated in retaliation. The issue of retaliation as it relates to these Misconducts has been addressed *supra*; however, to the extent Plaintiff is attempting to allege a constitutional violation simply based on the fact that the Misconducts were allegedly false, it is well established that the act of filing a

false disciplinary charge does not itself violate a prisoner's constitutional rights even if it may result in the deprivation of a protected liberty interest. *See* Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986) (A "prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest"), *cert*. *denied*, 485 U.S. 982 (1988). Instead, inmates have the right not to be deprived of a protected liberty interest without due process of law. Thus, where the prisoner is provided due process, no constitutional violation results from being falsely accused of a misconduct. *See* id. at 952-53 (holding that "the mere filing of [a false] charge" does not constitute a cognizable claim under § 1983 as long as the inmate "was granted a hearing, and he had the opportunity to rebut the unfounded or false charges"); Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir. 1984) (finding that so long as prison officials provide a prisoner with the procedural requirements outlined in Wolff v. McDonell, 418 U.S. 539, 558 (1974), then the prisoner has not suffered a constitutional violation); Strong v. Ford, 108 F.3d 1386, published in full-text format at 1997 U.S. App. LEXIS 5176, 1997 WL 120757 (9th Cir. 1997) (the alleged making of a false charge, however reprehensible or violative of state law or regulation, does not constitute deprivation of a federal right protected by section 1983 when it does not result in the imposition of atypical hardship on the inmate in relation to the ordinary incidents of prison life). *See also* Creter v. Arvonio, No. 92-4493, 1993 U.S. Dist. LEXIS 11016, 1993 WL 306425, at *7 (D. N.J. Aug. 5, 1993); Duncan v. Neas, No. 86-109, 1988 U.S. Dist. LEXIS 12534, 1988 WL 91571, at *1 (D. N.J. Aug. 30, 1988) (determining that "the alleged knowing falsity of the charge [does not state] a claim of deprivation of a constitutionally protected liberty interest . . . where procedural due protections were provided").

The threshold question presented by Plaintiff's claim is whether Defendants' actions impacted a constitutionally protected liberty interest. A liberty interest may arise either from the Due Process Clause itself, or from a statute, rule, or regulation. Hewitt v. Helms, 459 U.S. 460, 466 (1983). A liberty interest inherent in the Constitution arises when a prisoner has acquired a substantial, although conditional, freedom such that the loss of liberty entailed by its revocation is a serious deprivation requiring that the prisoner be accorded due process. Gagnon v. Scarpelli, 411 U.S. 778, 781 (1973). Interests recognized by the Supreme Court that fall within this category include revocation of parole, Morrissey v. Brewer, 408 U.S. 471 (1972), and the revocation of probation, Gagnon, 411 U.S. at 778. The Due Process Clause, however, does not create an inherent liberty interest to remain free from administrative segregation. *See*, *e.g.*, Hewitt, 459 U.S. at 468; Wolff, 418 U.S. at 556; Montayne v. Haymes, 427 U.S. 236, 242 (1976); Sheehan v. Beyer, 51 F.3d 1170, 1175 (3d Cir. 1995); Layton v. Beyer, 953 F.2d 839, 845 (3d Cir. 1992). Accordingly, Plaintiff can succeed under the Due Process Clause only if state law or regulation has created a constitutionally protected liberty interest in remaining free from administrative detention.

In Sandin v. Conner, 515 U.S. 472 (1995), the Supreme Court pronounced a new standard for determining whether prison conditions deprive a prisoner of a liberty interest that is protected by due process guarantees. Specifically, the Supreme Court held that prison conditions do not impact a protectable liberty interest unless they result in "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 483. Applying this test, the Supreme Court concluded that the prisoner in Sandin did not have a protected liberty interest in remaining free of disciplinary detention or segregation because his thirty-day disciplinary detention, though punitive, did not present a dramatic departure from the

basic conditions of his sentence.  In making this determination, the Supreme Court looked at two basic factors: (1) the amount of time the prisoner was placed into disciplinary segregation; and (2) whether the conditions of his confinement in disciplinary segregation were significantly more restrictive.  After reviewing these two factors, the Supreme Court concluded that thirty days in disciplinary detention, which was similar in many respects to administrative custody, did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest.

Here, Plaintiff has failed to demonstrate that he had a constitutionally protected liberty interest that was offended by Defendants' actions in issuing an alleged false misconduct.  Specifically, in deciding whether a protected liberty interest exists under Sandin, a federal court must consider the duration of the disciplinary confinement and the conditions of that confinement in relation to other prison conditions.  Mitchell v. Horn, 318 F.3d 523, 532 (3d Cir. 2003) (citing Shoats v. Horn, 213 F.3d 140, 144 (3d Cir. 2000)).  In this case, Plaintiff received 60 days of disciplinary time for Misconduct #A552586 and 105 days disciplinary time for Misconduct #B025225.  Courts within this Circuit and the State of Pennsylvania, applying Sandin in various actions, have found no protected liberty interest implicated by placement in disciplinary custody for similar amounts of time.  *See* Smith v. Mensinger, 293 F.3d 641, 652 (3d Cir. 2003) (Seven months disciplinary confinement did not implicate liberty interest); Griffin v. Vaughn, 112 F. 3d 703, 708 (3d Cir. 1997) (Finding that fifteen months in administrative custody did not deprive plaintiff of a liberty interest and thus he was not entitled to procedural due process protection.); Young v. Beard, 227 F. App'x 138, 141 (3d Cir. 2007) (holding that absent allegations showing that conditions in disciplinary confinement for 930 days imposed atypical and significant hardship on an inmate in relation to ordinary incidents of prison life, the

inmate was not entitled to procedural protections required by due process during prison disciplinary proceedings); Abney v. Walker, No. 2:06cv1248, 2007 U.S. Dist. LEXIS 36166, 2007 WL 1454265, at *3 (W.D. Pa. May 17, 2007) (adopting Report and Recommendation finding that 75 days in the RHU did not trigger due process protections); Brown v. Blaine, 833 A.2d 1166, 1172 (Pa. Commw. Ct. 2003) (Four months in the long term segregation unit was not an "atypical and significant hardship."). The facts before this Court simply do not support an entitlement to procedural due process protections. As such, Defendants are entitled to summary judgment as to this claim.

### C. Verbal Harassment

Plaintiff alleges numerous instances whereby he claims to have been verbally harassed by multiple Defendants. First, Plaintiff claims that Defendant Shculler harassed him in reference to an incident that occurred involving Plaintiff receiving a black card for sleeping-in on August 26, 2008.[5] He also alleges that Defendant Schuller further harassed him between August 29, 2008 and September 7, 2008, about a misconduct he received when he was previously incarcerated at SCI-Somerset, which he claims Defendant Schuller should not have been informed or aware of. Next, Plaintiff claims that he was harassed by Defendants Gordon, Yourema, and Yohe when he was called in for questioning about allegedly threatening Defendant Gordon on November 18, 2008. Although Plaintiff denied the threat, he states that Defendants continued to "gang question" him for four straight days at which time they harassed, verbally abused, and threatened him with bodily harm. Finally, Plaintiff claims that officers working the 2 to 10 shift swore at

---

[5] He alleges that Defendant Schuller made the following harassing comments: "one more black card and you get a misconduct," "lose your level 2 housing and get moved to level 3 then lose your parole," and "have a good time waking up tomorrow."

14

and harassed him when he attempted to ask them questions and show them information relating to his claims of retaliation.

To the extent Plaintiff attempts to raise a claim of verbal harassment, his claim is not actionable. Assuming Plaintiff's allegations are true, it is well-settled that the use of words alone, no matter how violent, do not amount to a constitutional violation under § 1983. *See* Burkholder v. Newton, 116 F. App'x 358, 360 (3d Cir. 2004); DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000); McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir.) ("mere threatening language and gestures of a custodial office[r] do not, even if true, amount to constitutional violations"), *cert. denied*, 464 U.S. 998 (1983); Wilson v. Horn, 971 F. Supp. 943, 948 (E.D. Pa. 1997) (verbal abuse and harassment, although not commendable, does not rise to the level of a constitutional violation), *aff'd*, 142 F.3d 430 (Table) (3d Cir. 1998); Maclean v. Secor, 876 F. Supp. 695, 698 (E.D. Pa. 1995) (threat by BOP guard to "see to it" that "pieces of s-" like plaintiff would be "taken care of" was not adequate to make out a constitutional claim as "[i]t is well-established that verbal harassment or threats . . . will not, without some reinforcing act accompanying them, state a constitutional claim"). Accordingly, Defendants are entitled to summary judgment on this claim.

### D. Supervisory Liability

Plaintiff claims that Defendant Harlow is liable for the retaliatory and harassing acts of his subordinates because he was aware of their behavior and did nothing to stop it. To establish personal liability against a defendant in a section 1983 action, that defendant must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*. Rizzo v. Goode, 423 U.S. 362 (1986). Accordingly, individual liability can be imposed under section 1983 only if the state official played an "affirmative part" in the

alleged misconduct. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Personal involvement by a defendant can be shown by alleging either personal direction or actual knowledge and acquiescence in a subordinate's actions. Rode, 845 F.2d at 1207; *see also* Keenan v. Philadelphia, 983 F.2d 459, 466 (3d Cir. 1992); Andrews v. Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990).

Moreover, a supervising public official has no affirmative constitutional duty to supervise and discipline so as to prevent violations of constitutional rights by his or her subordinates. Chinchello, 805 F.2d at 134. Notwithstanding, when a supervising official knowingly permits a continuing custom or policy that results in harm to the plaintiff, 1983 liability may attach. Colburn v. Upper Darby Township, 838 F.2d 663, 673 (3d Cir. 1988), *cert. denied*, 489 U.S. 1065 (1989) (Colburn I). However, at a minimum such liability may be imposed "only where there are both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate." Id. (quoting Chinchello, 805 F.2d at 133); *see also* Bonenberger v. Plymouth Township, 132 F.3d 20, 25 (3d Cir. 1997).

Here, Plaintiff must show that Defendant Harlow had actual knowledge of his subordinates' harassing and retaliatory actions and acquiesced in such conduct. Of importance, however, is that the absence of an underlying constitutional violation precludes any supervisory liability on a "knowledge or acquiescence" or "failure to train" theory. Crawford v. Lappin, 446 F. App'x 413, 416 (3d Cir. 2011) (nonprecedential) (citing Argueta v. U.S. Immigration and Customs Enforcement, 643 F.3d 60, 70 (3d Cir. 2011)); JGS v. Titusville Area Sch. Dist., 737 F. Supp. 2d 449, 458 (W.D. Pa. 2010) (summary judgment granted on supervisory liability claim

when the underlying constitutional claim lacked merit). As Plaintiff has failed to demonstrate the existence of an underlying violation of his constitutional rights for retaliation and verbal harassment, Defendant Harlow cannot be liable under a theory of supervisory liability for such conduct. As such, Defendant Harlow is entitled to summary judgment.

**E. Equal Protection – Selective Enforcement of Prison Rules and Regulations**

Plaintiff claims that he was the only inmate reprimanded for sleeping-in on August 26, 2008, despite the fact that he and his two cellmates all failed to wake up due to a faulty hallway speaker that had been broken for months. Although one of his cellmates initially received a misconduct for the incident, he claims that the Captain tore it up and that he was the only one to receive a black card. Plaintiff also claims that he was discriminatorily charged with Misconduct #A552583 for possessing contraband in the form of paper clips even though the paper clips belonged to his cellmate and a prison official had repeatedly warned his cellmate not to have them.

Equal protection means that "similarly situated persons are to receive substantially similar treatment from their government." Tapalian v. Tusino, 377 F.3d 1, 5 (1st Cir. 2004). To establish an equal protection violation based on selective enforcement, a plaintiff must introduce sufficient evidence from which a jury reasonably could conclude that, compared with others similarly situated, the plaintiff was treated differently based on an "unjustifiable standard, such as race, or religion, or some other arbitrary factor, . . . or to prevent the exercise of a fundamental right." Hill v. City of Scanton, 411 F.3d 118, 125 (3d Cir. 2005). Equal protection does not, however, require prison staff to treat all inmate groups the same when differentiation is necessary to avoid a threat to prison security. *See*, *e.g.*, Jones v. N.C. Prisoners' Labor Union, Inc., 433 U.S. 119, 136 (1977).

Here, Plaintiff has to show that the prison rule at issue was selectively enforced against him based on an "unjustifiable standard." The record before the Court, however, is devoid of any such evidence. Moreover, the record evidence demonstrates that Plaintiff was not charged with possession of contraband in the form of paper clips but rather was charged with and pled guilty to possession of contraband in the form of a broken TV cable and failure to report the presence of contraband. Nowhere in the misconduct report does it mention anything about possessing or failing to report the presence of contraband in the form of paper clips.

This Court will not second-guess hundreds (and perhaps thousands) of decisions made every single day by prison officials in the exercise of their professional judgment, something the United States Supreme Court has long held is an activity for which federal courts are unqualified. *See* Bell v. Wolfish, 441 U.S. 520, 546-47 (1979) (prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security"). While Plaintiff has not forfeited all constitutional protections by reason of his conviction and confinement in prison, Wolfish, 441 U.S. at 545, he enjoys no constitutional right to disobey legitimate prison rules and regulations. Accordingly, Defendants are entitled to summary judgment as to this claim.

## F. Conspiracy

In order to demonstrate a § 1983 civil conspiracy, a plaintiff is required to show that "two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law." Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 700 (3d Cir. 1993); *see also* Royster v. Beard, 308 F. App'x 576, 579 (3d Cir. 2009). However, "the gravamen of a civil action for conspiracy is found in the overt act which results from the conspiracy and culminates

18

in damage to the plaintiff." Henis v. Compania Agricola De Guatemala, 116 F. Supp. 223, 226 (D. Del. 1953), aff'd 210 F.2d 950 (3d Cir. 1954); see Adams v. Teamsters Local 115, 214 F. App'x 167, 172 (3d Cir. 2007) (the principal elements of a civil conspiracy "is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage") (internal quotations omitted). As stated by the Supreme Court, "the well-settled rule is that no civil action lies for a conspiracy unless there be an overt act that results in damage to the plaintiff." Nalle v. Oyster, 230 U.S. 165, 182 (1913); see Loughman v. Consol-Pennsylvania Coal Co., 6 F.3d 88, 105 (3d Cir. 1993) ("In its charge on civil conspiracy, the court instructed the jury: Plaintiffs are required to prove each of the following in order to prevail on this claim: . . . (4) *that the plaintiffs suffered damages as a result* [of the conspiracy].") (emphasis within); Waits v. McGowan, 516 F.2d 203, 208 (3d Cir. 1975) (Civil rights complaint that defendants had conspired to withhold information showing alleged illegal removal of plaintiff from Canada to New York without any extradition procedures or warrant failed to allege a cause of action under civil rights conspiracy provision, since plaintiff did not allege a conspiracy to deprive him of the equal protection of the United States laws or of equal privileges and immunities under the laws and an overt act in furtherance of the object of the conspiracy *with resulting injury to plaintiff*.) (emphasis added).

      Plaintiff's conspiracy claim is that Defendants Gordon, Yourema, and Yohe conspired to have inmate Larry McNeal "beat the hell" out of Plaintiff. Assuming that this is, in fact, true, Plaintiff points to no injury or deprivation of right that he suffered from Defendants' purported conspiracy and there is no evidence in the record to suggest that the request was carried out. Defendants are therefore entitled to summary judgment accordingly.

    **G.  State Law Claims**

To the extent Plaintiff's Second Amended Complaint contains any state law claims against Defendants, the Court declines to exercise supplemental jurisdiction over these claims as permitted by 28 U.S.C. § 1367(c)(3) ("(c) The district courts may decline to exercise supplemental jurisdiction over a claim under (a) if - . . . (3) the district court has dismissed all claims over which it has original jurisdiction").

**AND NOW**, this 25th day of September, 2012;

**IT IS HEREBY ORDERED** that Plaintiff's Motion in Support of Third Circuit's Remand (ECF No. 93), which has been construed as a Motion for Summary Judgment, is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 95) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court mark this case **CLOSED**.

**AND IT IS FURTHER ORDERED** that pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, Plaintiff has thirty (30) days to file a notice of appeal as provided by Rule 3 of the Federal Rules of Appellate Procedure.

　　　　　　　　　　　　　　　　　　　　Lisa Pupo Lenihan
　　　　　　　　　　　　　　　　　　　　Chief United States Magistrate Judge

cc: Robert R. Verbanik
　　CV 6719
　　SCI Albion
　　10745 Route 18
　　Albion, PA  16475

　　Counsel of record.